IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KELLY J. BUDDE,              )
                             )
          Plaintiff,         )
                             )
     v.                      )    1:15CV650
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of       )
Social Security,             )
                             )
          Defendant.         )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Kelly J. Budde ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act.

Presently before this court are Plaintiff's Motion for Judgment and accompanying memorandum (Docs. 9-10), and the Commissioner's Motion for Judgment on the Pleadings and accompanying memorandum (Docs. 11-12). This court also has

before it the certified administrative record,[1] and this matter is now ripe for adjudication.  After a careful consideration of the evidence of record, the Decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court finds that remand is proper.

I.  **BACKGROUND**

Plaintiff filed an application for a POD and DIB in October of 2011, alleging a disability onset date of September 30, 2011. (Tr. at 183-88.) The application was denied initially and upon reconsideration. (Id. at 106-18.) Plaintiff then requested a hearing before an ALJ. (Id. at 119-20.) At the November 4, 2013 hearing were Plaintiff, her representative, and a vocational expert ("VE"). (Id. at 40-72.) After the hearing, the ALJ

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer.  (Doc. 7.)

determined that Plaintiff was not disabled under the Act.[2] (Id. at 19-28.)

More specifically, the ALJ concluded (1) that Plaintiff had not engaged in "substantial gainful activity" during the relevant period, and (2) that she had the following severe impairments: degenerative disc disease of the lumbar spine with radicular pain; cervical radiculopathy; cervical spondylosis with myelopathy; cervical spondyloarthritis, status post C5-C7 anterior discectomy and fusion; diverticulitis; migraines; major depressive disorder; and "a pain disorder related to a general medical condition and psychological factors." (Id. at 21.) However, at step three, the ALJ decided that these severe impairments did not meet or equal a listed impairment. (Id.)

The ALJ then determined Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work, but that, in addition to this (1) she could only occasionally climb ramps

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. Id. at 473.

or stairs, but she could not climb ropes, ladders, or scaffolds, (2) she could only occasionally balance, stoop, kneel, crouch, or crawl, (3) she must avoid concentrated exposure to dangerous moving machinery and unprotected heights, (4) she was limited to only simple instructions and simple work related decisions, (5) she was limited to only routine changes in the work setting, and (6) she was limited to only brief, infrequent, and superficial contact with the public and only occasional contact with coworkers and/or supervisors. (Id. at 23.) The ALJ further found that Plaintiff could maintain attention and concentration for two hour segments over an eight hour period and that she could complete a normal workweek without excessive interruptions from psychological or physical symptoms. (Id. at 23.)

The ALJ then concluded that Plaintiff was unable to perform any past relevant work. (Id. at 26.) Next, based on Plaintiff's age as a "younger individual," her high school education and ability to communicate in English, work experience, and RFC, the ALJ found that there were jobs in the national economy that she could perform. (Id. at 26-27.) Accordingly, the ALJ entered a Decision that Plaintiff was not disabled and denied her benefits. (Id. at 27-28.)

On June 9, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the

-4-

Commissioner's final decision for purposes of review. (Id. at 1-6.) Plaintiff then initiated this action. (See Complaint (Doc. 2).)

**II. LEGAL STANDARD**

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock, 667 F.3d at 472 (internal quotation marks omitted)(alterations in the original).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation

marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted).

In undertaking this limited review, this court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

III. **PLAINTIFF'S ASSERTION OF ERROR**

Plaintiff asks this court to reverse the decision of the Commissioner, and she makes a single argument in support of her request. Specifically, Plaintiff contends the ALJ did not adequately account for her gastrointestinal limitations in the RFC analysis. (Pl.'s Mem. of Law in Supp. of Mot. for Judgment Reversing the Commissioner ("Pl.'s Br.") (Doc. 10) at 1.)

IV. **ANALYSIS**

A. **The ALJ did not Adequately Address Plaintiff's Gastrointestinal Issues in the RFC**

Plaintiff contends that the ALJ did not properly account for her gastrointestinal issues in the RFC. (Pl.'s Br. (Doc. 10) at 5-7.) The "RFC is a measurement of the most a claimant can do despite [her] limitations." Hines, 453 F.3d at 562 (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

-7-

Moreover, Social Security Ruling 96-8p explains that the RFC "'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed. Reg. at 34,478); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

Here, the ALJ addressed Plaintiff's gastrointestinal issues as follows:

> The claimant is partially credible regarding her diverticulitis related limitations. The claimant has a long history [of] abdominal pain that has been attributed to diverticulitis. Exhibit 2F, Exhibit 3F, and Exhibit 12F. The claimant eventually underwent a laparoscopic sigmoidectomy to address her symptoms of diverticulitis. Exhibit 18F. Following the surgery, the claimant reported intense rectal pain and left upper quadrant cramping. Exhibit 19F. However, the claimant reported to her treating provider that she only had these symptoms 2-3 times per week and there

-8-

>     is no evidence to suggest that the claimant's
>     abdominal symptoms would interfere with her ability to
>     do the range of unskilled light work discussed above.

(Tr. at 25.)

Thus, the ALJ found as fact that Plaintiff has a long history of abdominal pain attributed to diverticulitis for which she ultimately received a laparoscopic sigmoidectomy. (Tr. at 25 citing Tr. at 302-09, 310-406, 490-511, 580-98.) Nevertheless, it is at this point that the ALJ fails to draw a logical bridge between these factual findings and his conclusion that no evidence suggests that Plaintiff's gastrointestinal symptoms would limit her ability to work.

This is because there is evidence that, at least on its face, suggests that Plaintiff's gastrointestinal issues could limit her ability to work. Specifically, the ALJ apparently concluded that Plaintiff had episodes of spasming and cramping two to three times each week, because he stated as much in his analysis. (Tr. at 25.) Yet, the ALJ never addressed Plaintiff's repeated presentations to her doctors, and her hearing testimony, that her cramping and spasms <u>lasted up to two hours per episode, often requiring her to lie down</u>. (Tr. at 55, 604-06, 610, 712-13.) This is evidence that could potentially impact Plaintiff's ability to work a full day or workweek and

the fact that the ALJ did not address this evidence is troubling.³

This is because the VE testified that if Plaintiff were off task up to twenty percent of the workday, she would be unemployable. (Tr. at 68.) She would also be unemployable if she were to miss two days of work per month. (Id.) Likewise, the VE testified that if Plaintiff required unscheduled rest breaks for up to two hours due to pain and other symptoms, she would be unable to hold a job. (Tr. at 70.) Consequently, as the Fourth Circuit has recently reiterated in a published opinion, consideration by the ALJ of "the extent to which [a claimant] actually experience[s]" symptoms related to a severe impairment is necessary if this court is to discharge its obligations

---

³ The administrative record also indicates that even after her colon resection surgery, Plaintiff complained to her physicians of severe rectal pain, which her medical providers described as anorectal pain, proctalgia fugax, and irritable bowel syndrome. (Tr. at 604-06, 612 (doctor indicating that "her [symptoms] are most likely spasm related").) And, as the ALJ indicated, while Plaintiff did present to a treating provider, Dr. Christopher Jue, in September of 2013 that she had these severe pain and cramping episodes two to three times per week, this is not the entire story. (Tr. at 604.) Plaintiff also presented in October 2013 that these episodes were occurring three to four times per week (Tr. at 712), an assertion more consistent with her November 2013 hearing testimony that there were only two days a week that she was asymptomatic. (Tr. at 55.)
-10-

during appellate review. Monroe v. Colvin, No. 15-1098, 2016 WL 3349355, at *9-10 (4th Cir. June 16, 2016).

More specifically, in Monroe the claimant contended that the ALJ erred in determining his RFC without using a function-by-function analysis.[4] Id. at *9. In analyzing this issue as to the claimant's alleged episodes of loss of consciousness and fatigue, stemming from his sleep apnea and narcolepsy, the Fourth Circuit reasoned that:

> we have held that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." [Mascio, 780 F.3d at 636] (alterations and internal quotation marks omitted). We conclude that this is just such a case.

---

[4] The listed functions include

> the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions."

Mascio, 780 F.3d at 636 n.5 (quoting 20 C.F.R. § 416.945(b)-(d)).

> Because the ALJ never determined the extent to which Monroe actually experienced episodes of loss of consciousness and extreme fatigue, we cannot determine whether the hypothetical questions posed to the VE included all of Monroe's functional limitations, as they needed to do in order to be useful. See Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." (alteration and internal quotation marks omitted)). On remand, the ALJ will need to consider Monroe's narcolepsy and apnea, and all of his other physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work. Only once the ALJ has conducted such an analysis will he be able to move on to steps four and five, concerning Monroe's ability to perform past work and his ability to perform other work that exists in significant numbers in the national economy. See Mascio, 780 F.3d at 636.

Monroe, 2016 WL 3349355, at *9-10 (emphasis added).

Similarly, here, by failing to address evidence of the duration and impact of Plaintiff's episodes of spasming and cramping, the ALJ leaves this court in a difficult position. This is because the court must now speculate as to whether the ALJ tacitly disregarded Plaintiff's descriptions of the duration and impact of these episodes, while crediting evidence of their frequency, or whether the ALJ simply neglected to consider their duration and impact at all. As a result, the court cannot determine, without undue speculation, if the hypothetical questions posed to the VE included all of Plaintiff's functional

-12-

limitations, as they needed to do in order to be useful.  This prevents substantial review of evidence because it obscures the logical bridge between the evidence, the ALJ's findings of fact, and his conclusions of law. See Clifford, 227 F.3d at 872.

It is not the province of this court to weigh or reconcile evidence in the first instance. See Hays, 907 F.2d at 1456. The court is therefore hesitant to speculate, as Defendant invites it to do, as to what impact, if any, the duration of Plaintiff's episodes of pain and cramping would have on the RFC determination.  Put differently, it is not that the ALJ necessarily had to credit Plaintiff's presentation to her doctors regarding the frequency and duration of her spasms and cramping, but the ALJ did have an obligation to analyze the relevant evidence in a manner permitting judicial review. Remand is proper for this reason alone.

The court has an additional concern. At the outset of his RFC assessment, the ALJ found that Plaintiff could perform a narrow range of sedentary work.  (Tr. at 23.)  However, in later assessing Plaintiff's diverticulitis, quoted at length above, the ALJ indicated Plaintiff could perform light, not sedentary, work.  (Id. at 25.)  Likewise, the ALJ again referenced light, not sedentary, work at step five and also cited to Medical-Vocational Rule 202.21 (which addresses light, not sedentary,

-13-

work) in determining that "[a] finding of 'not disabled' is therefore appropriate under the frame work of the above-cited rule." (Tr. at 27.) See 20 C.F.R. Part 404, Subpart P, App. 2, 202.21.

Plaintiff does not contend that this error was prejudicial, instead characterizing it as "inconsistent[ ]." (Pl.'s Br. (Doc. 10) at 5.) This is perhaps because the jobs cited by the VE and referenced by the ALJ at step five were sedentary in nature and therefore consistent with the ALJ's initial articulation of the RFC. (Tr. at 27.) This error alone may therefore be insufficient to warrant remand. However, when considered along with the ALJ's failure to address the duration and impact of Plaintiff's presentation of cramping and spasming to her doctors, and the fact that Plaintiff's occupational base was already considerably reduced, this additional inconsistency heightens the court's concern as to whether the ALJ considered and evaluated all of the relevant evidence in determining Plaintiff's RFC. SSR 96-9p, 1996 WL 374185 at *1 (July 2, 1996) ("An RFC for less than a full range of sedentary work reflects very serious limitations

-14-

resulting from an individual's medical impairment(s) and is expected to be relatively rare.").[5]

Defendant does not agree that remand is in order, and instead contends that this court should affirm the ALJ's decision because "[s]ubstantial evidence supports the ALJ's finding that Plaintiff was not disabled but, instead, had the RFC to perform a range of sedentary work." (Def.'s Mem. of Law in in Support of Mot. for Judgment on the Pleadings ("Def.'s Br.")(Doc. 12) at 7.) Defendant details this evidence at length. (Id.) Defendant, however, fails to address the court's primary concern, articulated above, that the ALJ's decision is not susceptible to substantial evidence review in the first instance. Defendant's arguments also, at times, encourage the

---

[5] Plaintiff also, at least indirectly, challenges the ALJ's credibility analysis on this particular question. (Pl.'s Br. (Doc. 10) at 5-7.) At her hearing, Plaintiff testified that bowel incontinence alone required her to take five to seven trips a day to the bathroom. (Tr. at 49, 56.) Plaintiff also testified that one of the side effects of her medication included diarrhea. (Tr. at 53-55.) The ALJ acknowledged that Plaintiff testified at the hearing that she required frequent trips to the bathroom, but then never addressed the credibility of this testimony except in the general terms mentioned above, which do not permit meaningful review. (Tr. at 25.) Because remand is in order for the reasons set forth above, the court need not examine the issue of credibility definitely or at length. In any event, on remand, the ALJ should be mindful of the relevant regulatory factors and make it clear that they have been considered in assessing Plaintiff's credibility on this issue. 20 C.F.R. § 404.1529(c)(3).

court to specifically address evidence and articulate reasoning the agency did not specifically address or articulate in the first instance, which the court is hesitant to do. (See Def.'s Br. (Doc. 10) at 6-10); see also See Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (concluding the court cannot consider post-hoc rationalizations, but is instead limited to reviewing the rationalizations initially put forth by the agency) (citing Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). For all these reasons, the court concludes that remand is in order so that the ALJ may address the concerns set forth above. The court expresses no opinion regarding whether, at the end of the day, Plaintiff is disabled under the Act.

**V.  CONCLUSION**

**IT IS THEREFORE ORDERED** that the Commissioner's Decision finding no disability is **REVERSED**, and that the matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further proceedings consistent with this Memorandum Opinion and Order. To this extent, the Commissioner's Motion for Judgment on the Pleadings (Doc. 11) is **DENIED**, and Plaintiff's Motion for Judgment (Doc. 9) is **GRANTED**. To the extent that

Plaintiff's motion seeks an immediate award of benefits, it is **DENIED**.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 5th day of August, 2016.

                                        /s/ William L. Osteen, Jr.
                                        United States District Judge